UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LORENZO D. HOOD,

       Petitioner,

v.                                    Case No: 2:18-cv-346-FtM-29CM
                                      Case No. 2:14-CR-20-FTM-29CM

UNITED STATES OF AMERICA,

       Respondent.

_____

**OPINION AND ORDER**

This matter comes before the Court on petitioner's Motion
Under 28 U.S.C. Section 2255 to Vacate, Set Aside or Correct
Sentence by a Person in Federal Custody (Cv. Doc. #1; Cr. Doc.
#327 )[1] and a supporting Memorandum of Law (Cv. Doc. #2), both
filed on May 17, 2018.  The government filed a Response in
Opposition to Motion (Cv. Doc. #7) on July 3, 2018, and petitioner
filed a Reply (Cv. Doc. #11) on August 13, 2018.  For the reasons
set forth below, petitioner's motion is denied.

**I.**

On March 5, 2014, a federal grand jury in Fort Myers, Florida
returned a five-count Indictment (Cr. Doc. #3), and on May 14,

_____

[1]The Court will refer to the docket of the civil habeas case as
"Cv. Doc.", and will refer to the docket of the underlying criminal
case as "Cr. Doc."

2014, the grand jury returned a nine-count Superseding Indictment (Cr. Doc. #31) against petitioner Lorenzo D. Hood (petitioner or Hood) and four other persons. Petitioner was charged in five counts of the Superseding Indictment: (1) conspiracy to possess with intent to distribute and distribution of cocaine, crack cocaine, and heroin (Count One); (2) possession with intent to distribute and distribution of cocaine (Count Five); (3) possession with intent to distribute 500 grams or more of cocaine and a detectable amount of heroin (Count Six); (4) possession with intent to distribute cocaine (Count Eight); and (5) being a felon in possession of one or more firearms and ammunition (Count Nine).

On August 25, 2014, defense counsel filed a Motion for Pre-Trial Suppression Hearing (Cr. Doc. #103). After an evidentiary hearing and a Report and Recommendation (Cr. Doc. #126) by the magistrate judge, the district court issued an Opinion and Order (Cr. Doc. #132) on December 10, 2014, overruling petitioner's objections, fully adopting the Report and Recommendation, and denying the motion to suppress.

On March 20, 2015, a jury found petitioner guilty on all counts. (Cr. Doc. #192.) On September 15, 2015, the Court sentenced petitioner to 235 months imprisonment as to Counts 1, 5, 6, and 8, and 120 months imprisonment as to Count 9, to be served concurrently, followed by a term of supervised release. (Cr. Doc.

#263.) Judgment (Cr. Doc. #266) was filed on the same day. On April 12, 2017, the Eleventh Circuit affirmed petitioner's convictions and sentence. United States v. Lesane, 685 F. App'x 705 (11th Cir. 2017).

Petitioner's current motion is undated, but was filed on May 17, 2018. Since a petitioner "gets the benefit of up to 90 days between the entry of judgment on direct appeal and the expiration of the certiorari period," Kaufmann v. United States, 282 F.3d 1336, 1338 (11th Cir. 2002), the motion was timely filed. See also 28 U.S.C. § 2255(f).

## II.

Petitioner identifies fourteen claims for relief. Petitioner argues that trial counsel provided ineffective assistance by failing to: (1) notify the government that he was willing to plead guilty; (2) file a motion to dismiss Count One of the Superseding Indictment based on the statute of limitations; (3) impeach Detective Tice with his prior suppression hearing testimony; (4) object to Detective Petaccio's lay opinion testimony as to identification; (5) object to the aiding and abetting theory and the corresponding jury instruction; (6) argue that under the Sentencing Guidelines an individualized finding had to be made as to the actual drug amount attributable to petitioner; (7) object to the two-level enhancement for possession of a firearm

under the Sentencing Guidelines; (8) object under the Sentencing Guidelines to the lack of evidence as to the purity of the cocaine charged in Count Eight; and (9) object to the petitioner's criminal history calculation under the Sentencing Guidelines.

Petitioner also argues that appellate counsel was ineffective by failing to: (1) appeal the enhancement under the Sentencing Guidelines for being a manager or supervisor; (2) brief the issue of the insufficiency of evidence to convict petitioner of possession of a firearm; (3) properly brief the insufficiency of the evidence to convict petitioner under an overall conspiracy in Count One; and (4) file a timely petition for rehearing and rehearing *en banc*. Petitioner's final argument is that he is entitled to a new trial based on the government's due process violation for destroying certain drugs after testing.

### A. Evidentiary Hearing

A district court shall hold an evidentiary hearing on a habeas petition "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. . . ." 28 U.S.C. § 2255(b). "[I]f the petitioner alleges facts that, if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of his claim." Aron v. United States, 291 F.3d 708, 714-15 (11th Cir. 2002) (citation omitted). However, a "district court is not

required to hold an evidentiary hearing where the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous." Id. at 715. See also Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008) (a hearing is not necessarily required whenever ineffective assistance of counsel is asserted). To establish entitlement to an evidentiary hearing, petitioner must "allege facts that would prove both that his counsel performed deficiently and that he was prejudiced by his counsel's deficient performance." Hernandez v. United States, 778 F.3d 1230, 1232-33 (11th Cir. 2015).

Viewing the facts alleged in the light most favorable to petitioner, the Court finds that the record establishes that petitioner is not entitled to relief as to any of his claims. Therefore, an evidentiary hearing is not required.

**B. Ineffective Assistance of Counsel Standard**

The legal standard for ineffective assistance of counsel claims in a habeas proceeding is well established. To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate both that (1) counsel's performance was deficient because it fell below an objective standard of reasonableness, and (2) prejudice resulted because there is a reasonable probability that, but for the deficient performance, the result of the proceeding would have been different. Hinton v. Alabama, 571 U.S.

263, 272 (2014) (citing Strickland v. Washington, 466 U.S. 668, 687, 694 (1984) and Padilla v. Kentucky, 559 U.S. 356, 366 (2010)). "Because a petitioner's failure to show either deficient performance or prejudice is fatal to a Strickland claim, a court need not address both Strickland prongs if the petitioner fails to satisfy either of them." Kokal v. Sec'y, Dep't of Corr., 623 F.3d 1331, 1344 (11th Cir. 2010) (citations omitted).

The proper measure of attorney performance is simply reasonableness under prevailing professional norms considering all the circumstances. Hinton, 571 U.S. at 273 (citations omitted). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. See also Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (the Court looks to facts at the time of counsel's conduct). This judicial scrutiny is highly deferential, and the Court adheres to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689-90. To be objectively unreasonable, the performance must be such that no competent counsel would have taken the action. Rose v. McNeil, 634 F.3d 1224, 1241 (11th Cir. 2011); Hall v. Thomas, 611 F.3d

1259, 1290 (11th Cir. 2010).  Additionally, an attorney is not ineffective for failing to raise or preserve a meritless issue. United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992); Ladd v. Jones, 864 F.2d 108, 109-10 (11th Cir. 1989).

The same deficient performance and prejudice standards apply to appellate counsel.  Smith v. Robbins, 528 U.S. 259, 285-86 (2000); Roe v. Flores-Ortega, 528 U.S. at 476-77.  If the Court finds there has been deficient performance, it must examine the merits of the claim omitted on appeal.  If the omitted claim would have had a reasonable probability of success on appeal, then the deficient performance resulted in prejudice.  Joiner v. United States, 103 F.3d 961, 963 (11th Cir. 1997).  Nonmeritorious claims which are not raised on direct appeal do not constitute ineffective assistance of counsel.  Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1144-45 (11th Cir. 2005).

### III.

**A. Ineffective Assistance of Trial Counsel Claims**

**(1)  Ground One:  Plea Negotiations**

Petitioner's attorney told petitioner that the government wanted him to cooperate and would not make a plea offer which did not include cooperation.  Petitioner asserts that he wanted his attorney to negotiate a plea agreement, but states he was adamant about not cooperating.  Petitioner asserts that his attorney never

conveyed this information to the government during plea negotiations. Petitioner therefore proceeded to trial and was convicted on all counts. Petitioner argues that there is a reasonable probability a non-cooperation guilty plea would have been accepted by both the government and the Court, he would have received a three-level reduction for acceptance of responsibility, and his sentence would have been lower. Petitioner asserts, therefore, that he received ineffective assistance of counsel during the plea negotiation process.

A defendant in a criminal case is entitled to effective assistance of counsel during plea negotiations. <u>Lafler v. Cooper</u>, 566 U.S. 156, 162 (2012); <u>Missouri v. Frye</u>, 566 U.S. 134, 140-44 (2012). In this case, it is undisputed that the government would not offer a plea agreement which did not include cooperation, and petitioner would not accept a plea offer which did include such cooperation. As defense counsel stated,

> Mr. Barclift never extended a plea offer that did not include cooperation. Mr. Hood was emphatic that he did not wish to plea to any of the charges in this case, and that he specifically had hired me to go to trial. Every time I broached the subject of a plea, Mr. Hood would reiterate that statement. Nevertheless, I did request of Mr. Barclift that he provide an offer I could communicate to Mr. Hood that did not include cooperation. Mr. Barclift reiterated that any plea offer would include cooperation, and that Mr. Hood's criminal record did not suggest any other offer was appropriate.

(Cv. Doc. #7, p. 8.)  The record establishes the government's consistent refusal to make a plea agreement without cooperation. The only guilty plea in the case, by defendant Walter J. Campbell, who was not called as a government witness, was to all counts against him without the benefit of a plea agreement.  (Cr. Doc. #168.)

It is clear that under the circumstances of this case there was not going to be a plea offer from the government without a cooperation requirement, and petitioner concedes he would not have accepted any offer that required cooperation.  There was no ineffective assistance of counsel in the plea negotiations or prejudice to petitioner, just an inability of the parties to agree on the terms of a plea agreement.  The motion is denied as to this claim.

### (2)  Ground Two:  Failure to File Motion to Dismiss

Petitioner argues that his counsel should have filed a motion to dismiss Count One of the Superseding Indictment based on the five-year statute of limitations.  Petitioner argues that if counsel had properly reviewed the discovery material, he would have known to file such a motion.  Additionally, petitioner points to the following portion of the government's closing arguments as proof that the conspiracy took place in 2004:

> You'll also recall that Nicholas Herman told
> you that when he first started dealing with

Lorenzo Hood, that he would make contact with Mr. Hood by phone, and go to a residence behind the flea market and pick up still small amounts of cocaine, and ultimately he started getting heroin as well, but that on occasion, Mr. Hood would have somebody else actually deliver the cocaine to him. Now, that's an unnamed person. We don't know who that is. But that dates back to '04/'05.

So that's the reason that the conspiracy as charged reaches back that far in time. There's evidence of conspiratorial activity.

(Cr. Doc. #280, p. 13.) Petitioner argues that the conspiracy with the "unnamed person" took place on or about 2004, but was not a continuing offense, and as such it did not extend the statute of limitations.

The Superseding Indictment was returned on May 14, 2014. In Count One of the Superseding Indictment (Cr. Doc. #31), the grand jury charged a conspiracy "[f]rom in or about 2004, to in or about the fall of 2013" in violation of 21 U.S.C. § 841(a)(1), § 841(b)(1)(C), and § 846. A person may not be prosecuted or tried "unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." 18 U.S.C. § 3282(a). Thus, the conspiracy charge in this case is timely if the conspiracy continued to May 14, 2009, five years before the Superseding Indictment was filed.[1]

---

[1] Because it does not affect the outcome, the Court need not decide whether the five years should be measured from the date of the original Indictment (March 5, 2014) or the date of the Superseding

In a § 846 conspiracy

> [t]he government satisfies the requirements of
> the statute of limitations for a non-overt act
> conspiracy if it alleges and proves that the
> conspiracy continued into the limitations
> period. <u>United States v. Arnold</u>, 117 F.3d
> 1308, 1313 (11th Cir. 1997). The government
> only has to show, either directly or
> circumstantially, that a conspiracy existed;
> that the defendant knew of the conspiracy; and
> that with knowledge, the defendant became a
> part of the conspiracy. <u>Id.</u> A conspiracy is
> deemed to have continued as long as the
> purposes of the conspiracy have neither been
> abandoned nor accomplished and the defendant
> has not made an affirmative showing that the
> conspiracy has terminated. <u>United States v.</u>
> <u>Gonzalez</u>, 921 F.2d 1530, 1548 (11th Cir. 1991)
> (citing <u>Coia</u>, 719 F.2d at 1124). A defendant
> can overcome this presumption of continued
> participation only by showing that he
> affirmatively withdrew from the conspiracy or
> that the final act in furtherance of the
> conspiracy has occurred. <u>Reed</u>, 980 F.2d at
> 1584.

<u>United States v. Harriston</u>, 329 F.3d 779, 783 (11th Cir. 2003).

The issue therefore is whether the charged conspiracy continued to

within five years of the filing of the Superseding Indictment,

i.e., continued through at least to May 14, 2009.

The jury was instructed on multiple conspiracies (Cr. Doc.

#280, pp. 75-77), and by its verdict found petitioner guilty of a

single conspiracy (Cr. Doc. #192). The evidence clearly supported

the jury's finding of a single conspiracy which existed well into

---

Indictment.

the statute of limitations period, as is evident from the summary of the facts in <u>United States v. Lesane</u>, 685 F. App'x 705, 707-12 (11th Cir. 2017). Evidence showed that Bobby Lesane and Maury Morris became involved in the conspiracy in 2013 when activities reached 6226 Demery Circle. In Count 6, petitioner was charged with and convicted of a substantive offense for activities in 2013 at this same address. (<u>Id.</u>, pp. 13, 17-18.) Petitioner does not specifically argue that he withdrew at any time, and no evidence supports a withdrawal from or termination of the conspiracy.

The record establishes that there was no factual basis for a motion to dismiss based on the statute of limitations. Therefore, counsel was not deficient by failing to file a motion that had no merit, and there was no prejudice to petitioner. The motion is denied as to this claim.

### (3) Ground Three: Failure To Impeach Detective Tice

Petitioner argues that defense counsel allowed Detective Tice to testify at trial without impeaching him with his prior inconsistent suppression hearing testimony. This, petitioner asserts, constituted ineffective assistance of counsel.

On October 29, 2013, Detective Tice took part in the execution of a search warrant on the residence at 1606 Hibiscus Avenue[2],

---

[2] Testimony refers to the address as 1606 Hibiscus Avenue, however the Presentence Report uses 1606 Hibiscus Drive. The Court references both Avenue and Drive herein for the 1606 Hibiscus

during which he took a number of photographs. Detective Tice testified at the October 7, 2014 suppression hearing that after all the photographs were taken, several tests were conducted on various individual items depicted in the photographs. Detective Tice, however, did not have the items individually marked on what tested positive and what did not. (Cr. Doc. #300 p. 22.) As to the photograph depicted in Exhibit 4G, Detective Tice testified:

> A. 4G is a -- it's a box like a Pop-Tart box that was just sitting with the top open; and there's a bag of what appeared to be narcotics or a cutting agent at the time. All you could see was a plastic baggie tied up top with some white powder substance inside.
>
> Q. And that was ultimately determined not to be a controlled substance?
>
> A. I believe so, it was.
>
> Q. And you would therefore conclude that it is something else?
>
> A. Definitely with my training and with what I've done with Lee County Sheriff's Office, that is definitely used for a cutting agent.

(Cr. Doc. #300, p. 25.) At trial on October 8, 2015, Detective Tice again testified regarding the Pop-Tart box depicted in a photograph:

> Q Deputy Tice, from your perspective, what is this?
>
> A That is a Pop-Tart box that was located on the left side of the bed in the master bedroom,

---

address depending on the source.

> with a bag of white powder inside that later
> tested for cocaine.

(Cr. Doc. #276, p. 34.) Ronald Ralls, evidence manager of the Lee County Sheriff's Department testified that he sent evidence seized from 1606 Hibiscus Avenue to the FDLE for processing, including the cocaine from the Pop-Tart box. (Id., p. 108-111.) On cross-examination, counsel for petitioner questioned Detective Tice about the location of the Pop-Tart box, and whether the box had since been destroyed. (Id., pp. 51, 55.) Defense counsel, however, did not impeach Detective Tice with his suppression hearing testimony that he believed the substance was cutting agent.

Petitioner argues that counsel should have impeached Tice with his prior inconsistent testimony. The government responds that such impeachment would not have been "sound trial strategy" in light of laboratory results that confirmed the presence of cocaine.[3]

---

[3] Petitioner also argues that he had discovered a testing kit at the residence after he was released from state custody, which he gave to his girlfriend, who in turn gave it to his attorney. Petitioner asserts counsel should have impeached Detective Tice with the testing kit to show that Detective Tice did indeed test the substance. Even apart from the obvious chain of custody issues, finding a testing kit at the residence would not have impeached Detective Tice's prior testimony. The kit would not have established that Detective Tice did any testing, and he testified that other officers had tested a number of items. Defense counsel was not ineffective for failing to pursue this avenue.

Counsel was not deficient for failing to confront Detective Tice with his suppression hearing testimony. It is not clear that there was a material inconsistency in the testimony, since Detective Tice simply testified to what he believed was the situation as of the date of the suppression hearing. To identify the alleged inconsistency would have emphasized the fact that the substance was indeed cocaine, not just a cutting agent as Detective Tice originally believed. Petitioner concedes the FDLE report identified the substance as cocaine. (Cv. Doc. #8, p. 8.) Further, in light of the overwhelming evidence, there is no prejudice from the failure to elicit such minimal impeachment. Petitioner has failed to establish any deficient performance or prejudice, and the claim is denied.

**(4) Ground Four: Det. Petaccio's Identification Testimony**

Petitioner argues that counsel should have objected to Detective Candice Petaccio's lay opinion that petitioner was one of the persons depicted in surveillance videos introduced by the government. Petitioner argues that the opinion was not based on first-hand observation or a familiarity with petitioner, and therefore was inadmissible under Rule 701, Federal Rules of Evidence. Petitioner argues the court would have sustained an objection if one had been made, and therefore counsel provided ineffective assistance by failing to object.

A video surveillance system was installed at 6226 Demery Circle, one of the houses from which defendants sold drugs. When a search warrant was executed on the premises on September 9, 2013, officers seized two weeks' worth of video surveillance tapes which showed, among other things, various defendants selling drugs. (Cr. Doc. #279, pp. 36-37.) Detective Petaccio was the co-case agent (id., p. 30) who had watched 336 hours of the four-camera views to transfer clips and record what was playing on the DVR. (Id., p. 39.) Detective Petaccio identified various exhibits related to the surveillance system and its resulting videos and her efforts to produce exhibits reflecting a sample of the drug activity. (Id., pp. 36-48.) For example, Exhibit 12B covers activity on Day 8 of people coming and going from the residence and purchasing drugs. (Id., p. 42.) Exhibit 12C1 was a still photo made from the videos showing Lorenzo Hood (id., p. 45), while Exhibit 33D was a representative sample of the videos which captured petitioner conducting "what appears to be a drug transaction at the back door." (Id., pp. 46-47.) When questioned by counsel for petitioner regarding the identification, Detective Petaccio stated that the identification was done by her and others working for her. (Id., p. 47.) The Exhibit was admitted without objection. (Id.)

Under Rule 701, lay witness testimony in form of an opinion is limited to one that is "rationally based on the witness's perception." Fed. R. Evid. 701. "Opinions by lay witnesses must be derived from personal knowledge or experience." Williams v. Mosaic Fertilizer, LLC, 889 F.3d 1239, 1250 (11th Cir. 2018). Identification based on observations related to the case, or familiarity with a defendant, is appropriate. United States v. Knowles, 889 F.3d 1251, 1257 (11th Cir. 2018). "The ultimate decision as to the admissibility of lay opinion testimony is committed to the sound discretion of the district court and will not be overturned on appeal unless there is a clear abuse of discretion." United States v. Pierce, 136 F.3d 770, 773 (11th Cir. 1998)(citation omitted).

Detective Petaccio testified she had over eight years' experience investigating drug dealers, with four years as a member of the DEA Task Force. (Cr. Doc. #279, pp. 30-31.) In this case, Detective Petaccio was the co-case agent on the lengthy investigation, and she reviewed hundreds of hours of surveillance videos covering a two week period. Agent Petaccio testified as to the content of the exhibits and demonstrated a certainty as to the identification of each of the defendants, including petitioner. The identification was based on her observation and familiarity with the case, defendants, and the testimony discussed

criminal activity seen on the surveillance.  The jury was provided an instruction as to factors to consider when evaluating identification testimony.  (Cr. Doc. #188, p. 8.)

The failure to object to Detective Petaccio's identification was not deficient performance, and an objection would not have been sustained.  Because there was no ineffective assistance of counsel, the motion is denied.

### (5)  Ground Five: Aiding and Abetting

Petitioner argues that the Superseding Indictment did not place him on notice of the government's aiding and abetting theory because there was no allegation he aided and abetted other members of the conspiracy.  Petitioner argues that counsel therefore should have objected to the government presenting the aiding and abetting theory to the jury and the corresponding jury instruction. Finally, Petitioner argues there is no evidence the grand jury returned the Indictment based on the "element" of aiding and abetting.

There was no aiding and abetting theory argued by the government as to the conspiracy count.  The substantive drug charges against petitioner in the Superseding Indictment were Counts Five, Six, and Eight, all of which referenced an aiding and abetting theory by citing 18 U.S.C. § 2.  (Cr. Doc. #31, pp. 3-

5.)[4] Aiding and abetting is not a separate crime or element of a crime. "Rather, it merely permits one who aids and abets the commission of a crime to be punished as a principal. [ ] An individual, therefore, may be indicted as a principal for the commission of a substantive crime and convicted upon evidence that he or she aided and abetted only." United States v. Walser, 3 F.3d 380, 388 (11th Cir. 1993)(citations omitted). Here, petitioner was placed on notice of the aiding and abetting theory as to the substantive drug offenses in the Superseding Indictment, and the jury was given the Eleventh Circuit pattern jury instruction regarding aiding and abetting. (Cr. Doc. #280, pp. 79-80.) There was no legal basis for counsel to object to either an aiding and abetting theory or the aiding and abetting jury instruction. Because there was no basis for counsel to assert such objections, there was no ineffective assistance of counsel. This claim is denied.

### (6) Ground Six: Individualized Drug Calculation

Petitioner argues that his base offense level under the Sentencing Guidelines was improperly calculated because he should have only been held responsible for the amount of drugs

---

[4] Section 2 provides that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." 18 U.S.C. § 2(a).

attributable to him, not the entire amount of drugs in the conspiracy. Petitioner asserts his attorney should have objected to this error, and had he done so the sentence would have been lower.[5]

Petitioner, and each defendant, had a separate Verdict Form. See Cr. Doc. #192. As to Count One, the jury found petitioner guilty of a conspiracy involving cocaine, crack cocaine, and heroin, and found that the quantity of crack cocaine was not 28 grams or more. In Count Six, the jury found petitioner guilty of possession with intent to distribute 500 or more grams of cocaine.

The Presentence Report (PSR) (Cr. Doc. #225) calculated the base offense level for petitioner under USSG § 2D1.1. (Id., ¶ 74.) After summarizing the evidence, the PSR concluded:

> In this case, Lorenzo Hood was historically involved in the distribution of drugs since at least 2005, as verified through confidential sources. He is conservatively accountable for at least 1.8 kilograms of cocaine, 26.09 grams of heroin, 16.28 grams of cocaine base, "crack cocaine," seven grams of Roxicodone and 3 grams of marijuana. Lorenzo Hood's role in this conspiracy was that of a leader over the organization. He made the decisions, obtained the supply, and maintained the premises where drugs were distributed. Lorenzo Hood was additionally found to possess weapons during the drug distribution activities at 1606 Hibiscus Avenue in Lehigh Acres, Florida.

---

[5] Petitioner also includes discussion of drug purity in this ground, but this issue is addressed in Ground Nine.

(Cr. Doc. #225, ¶64) (emphasis omitted).  Based upon these amounts of cocaine, heroin, and crack cocaine, the PSR determined petitioner's Base Offense Level was 26.  (Cr. Doc. #264, ¶ 74.) Counsel did not have any factual objections to the presentence report because "[m]ost of it is taken directly from the trial." (Cr. Doc. #296, p. 5.)  The Court adopted this calculation.

The Eleventh Circuit has recently summarized the process for calculation an amount of drugs attributable to a defendant:

> When the amount of the drugs [actually] seized does not reflect the scale of the offense, the district court [instead] must approximate the drug quantity attributable to the defendant. [ ] In doing so, it may rely on evidence demonstrating the average frequency and amount of a defendant's drug sales over a given period of time. [ ] This determination may be based on fair, accurate, and conservative estimates of the drug quantity attributable to a defendant, but it cannot be based on calculations of drug quantities that are merely speculative. [ ] Relevant here, when a district court sentences a member of a "jointly undertaken criminal activity," it may consider the conduct of "others that was . . . in furtherance of the jointly undertaken criminal activity" and "reasonably foreseeable in connection with that criminal activity." U.S.S.G. § 1B1.3 cmt. n.2. This analysis requires the district court to first determine the scope of the criminal activity the particular defendant agreed to jointly undertake.

United States v. Dixon, 901 F.3d 1322, 1349 (11th Cir. 2018)(internal citations omitted).  This is exactly what the PSR did, and there was no ground for a viable objection by defense

counsel.    Petitioner  has  not  established  any  ineffective
assistance of counsel, and this claim is therefore denied.

### (7)  Ground Seven: Failure to Object to Firearm Enhancement

Petitioner  argues  that  counsel  should  have  objected  to  the
two-level  enhancement  for  possession  of  a  firearm  during  a  drug
trafficking  offense.    This  would  have  required  the  government  to
prove by a preponderance of the evidence that the firearm found in
the  closet  of  the  Lehigh  Acres  residence  was  related  to  the  drug
trafficking  crime.    Petitioner  asserts  there  was  no  evidence  to
support  such  an  enhancement,  resulting  in  a  reasonable  probability
that  the  Court  would  have  sustained  an  objection.    (Cv.  Doc.  #2,
p. 14.)

The  PSR  reflects  that  petitioner  was  in  possession  of  drugs,
firearms, ammunition and drug paraphernalia at 1606 Hibiscus Drive
in  Lehigh  Acres  when  a  search  warrant  was  executed.    (Cr.  Doc.
#264, ¶ 75.)  The PSR applied a two level increase for possession
of  a  dangerous  weapon  under  U.S.  Sentencing  Guidelines  Manual  §
2D1.1(b)((1).    (<u>Id.</u>)    The  guideline  for  drug-trafficking
offenses, § 2D1.1, provides for a two-level increase to the offense
level  when  "a  dangerous  weapon  (including  a  firearm)  was
possessed." U.S. Sentencing Guidelines Manual § 2D1.1(b)(1).

To  justify  this  sentencing  enhancement,  "[t]he  government
bears  the  initial  burden  of  showing,  by  a  preponderance  of  the

evidence, that a firearm was 'present' at the site of the charged conduct or that the defendant possessed it during conduct associated with the offense of conviction." <u>United States v. George</u>, 872 F.3d 1197, 1204 (11th Cir. 2017). This requires a showing "that the firearm had some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence." <u>Id.</u> (citation omitted). After the government meets its initial burden, the burden shifts to the defendant to "establish that a connection between the weapon and the offense was clearly improbable." <u>Id.</u> (citation omitted); <u>see</u> U.S. Sentencing Guidelines Manual § 2D1.1, cmt. n.11(A). Failure to produce such evidence permits a district court to apply the enhancement without committing clear error. <u>United States v. Hall</u>, 46 F.3d 62, 64 (11th Cir. 1995).

The Eleventh Circuit has held that "proximity between guns and drugs, without more, is sufficient to meet the government's initial burden under § 2D1.1(b)(1)." <u>United States v. Carillo-Ayala</u>, 713 F.3d 82, 91 (11th Cir. 2013). Further, a weapon may be "present" at the site of the charged conduct regardless of whether it is in the same room where the offense conduct occurred, as long as it is at the same general location. <u>United States v. Trujillo</u>, 146 F.3d 838, 847 (11th Cir. 1998) (holding that a weapon was "present" for the purposes of the § 2D1.1(b)(1) enhancement

where the firearm was in the office of a warehouse, and the cocaine was found in and around the warehouse); United States v. Hall, 46 F.3d 62, 63 (11th Cir. 1995) (upholding the enhancement where "the handgun was in the same room with objects ordinarily associated with the drug trade: scales, a ziplock bag containing cocaine residue, and a large amount of cash."); George, 872 F.3d at 1204–05 (upholding the enhancement where the weapon was found at the front desk of a barbershop, while the offense conduct occurred in a back room).

Petitioner's driver's license lists the Hibiscus Drive address as his primary residence. (Cr. Doc. #264, ¶ 53.) On October 29, 2013, the United States Marshal's Office breached the front door and apprehended petitioner as he walked from the south master bedroom. (Id., ¶ 54.) In clear view, in the kitchen, were baggies and measuring cups with white residue, and a digital scale. In the office was a machine gun style rifle with a matching scope (DPMS, Model LR-308, .307 Caliber Rifle). Inside the south master bedroom, officers observed a baggie containing cocaine and utensils with cocaine residue on a dresser. (Id., ¶ 55-56.)

After these items were observed in plain view, a search warrant was obtained and the following items were seized:

1. 154.2 Grams of Cocaine from the Master Bedroom

2. Remington, Model 870, 20 Gauge Shotgun

3. Ruger, Model SR-556, 5.56mm Caliber Rifle

4. DPMS, Model LR-308, .308 Caliber Rifle

5. Maverick Arms, Model 88, 12 Gauge Shotgun

6. Mossberg, Model 500, 12 Gauge Shotgun

7. Marlin, Model 60, .22 Caliber Rifle

8. 20 Rounds Winchester, 7.62 mm Caliber Ammunition

9. 14 Rounds of Hornady, .223 Remington Caliber Ammunition

10.  7 Rounds of Tulammo, .223 Remington Caliber Ammunition

11.  1 Round of G.F.L., .223 Remington Caliber Ammunition

(Id., ¶ 57.)

Considering that both a quantity of cocaine and weapons were found in the same home, there was no reasonable objection that counsel could have made against the two-level increase for possession of a dangerous weapon. The evidence clearly established that the government satisfied its burden, and that there was a very likely connection between the weapons and the offense. Counsel was not deficient for failing to argue against this two level increase since any such argument would be meritless. The motion is denied on this issue.

## (8)  Ground Eight[6]: Criminal History Calculation

Section 4A1.1 of the Sentencing Guidelines sets forth the number of criminal history points to assign to certain prior

---

[6] The Petition contains two Ground Eights, so the Court's numbering

convictions based on a variety of factors, including the length of
imprisonment imposed. U.S. Sentencing Guidelines Manual § 4A1.1.
The relevant portion provides:

> The total points from subsections (a) through
> (e) determine the criminal history category in
> the Sentencing Table in Chapter Five, Part A.
>
> (a) Add 3 points for each prior sentence of
> imprisonment exceeding one year and one month.
>
> (b) Add 2 points for each prior sentence of
> imprisonment of at least sixty days not
> counted in (a).
>
> (c) Add 1 point for each prior sentence not
> counted in (a) or (b), up to a total of 4
> points for this subsection.
>
> . . . .

U.S. Sentencing Guidelines Manual § 4A1.1.

Petitioner raises two claims in connection with the
calculation of his criminal history points. Petitioner argues
that he should not have been assigned three criminal history points
for each of three sets of convictions (PSR ¶¶ 95, 99, 100) since
they had been consolidated for sentencing and he was sentenced to
concurrent terms of imprisonment. Additionally, petitioner argues
he should not have been assigned two points as to each conviction
in paragraphs 101 and 103 of the PSR because the length of the
actual sentences did not qualify for the points. Because counsel

------

hereafter will differ by one digit from petitioner's.

did not object, petitioner asserts he received ineffective assistance.

**(a)   Scoring of Concurrent Sentences**

In three of his prior cases, Petitioner was arrested on separate dates for offenses committed on separate dates, but was ultimately sentenced to concurrent terms of imprisonment at a single sentencing proceeding.  Specifically, petitioner received three criminal history points for each of the following three sets of convictions:

- On or about January 7, 2002, petitioner was found with an ATV that had been reported stolen from a dealership. Petitioner was arrested on January 7, 2003.  On September 7, 2005, in Docket No. 03CF86, petitioner pleaded nolo contendere to grand theft and was sentenced to 24 months of prison, with 244 days credit for time served.  (Cr. Doc. #264, ¶ 95.)

- On or about June 29, 2003, petitioner was arrested after a traffic stop in which petitioner sped off, abandoned the vehicle and fled on foot.  On September 7, 2005, in Docket No. 03CF3449, petitioner pleaded nolo contendere to fleeing or attempting to elude an officer, driving with a suspended license, and resisting or obstructing an officer without violence.  Petitioner was sentenced

on September 7, 2005 to concurrent 24 month terms imprisonment, and sentenced to 224 days of time served as to the third count. (Id., ¶ 99.)

- On or about August 12, 2003, petitioner was arrested after an attempted traffic stop where petitioner failed to stop and drove recklessly for an eleven mile chase, resulting in the vehicle rolling over and ending up in a ditch. On September 7, 2005, in Docket No. 03CF4013, petitioner pleaded nolo contendere to aggravated assault of an officer or firefighter and aggravated fleeing or eluding, and was sentenced to concurrent terms of 24 months imprisonment. (Id., ¶ 100.)

Petitioner argues that because these three cases were consolidated for sentencing and concurrent sentences were imposed, they should not have been separately scored and his attorney should have objected at sentencing.

The Court is to "[a]dd 3 points for each prior sentence of imprisonment exceeding one year and one month." U.S. Sentencing Guidelines Manual § 4A1.1(a). A "prior sentence" is "any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere, for conduct not part of the instant offense." U.S.S.G. 4A1.2(a)(1). "If the defendant has multiple prior sentences, [the Court must] determine whether

those sentences are counted separately or treated as a single sentence." U.S. Sentencing Guidelines Manual § 4A1.2(a)(2). The following rules apply:

> Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day. Treat any prior sentence covered by (A) or (B) as a single sentence. See also § 4A1.1(e).

U.S. Sentencing Guidelines Manual § 4A1.2(a)(2). "An intervening arrest is one that comes in between the commission of the first criminal act and the second." United States v. Wright, 862 F.3d 1265, 1281 (11th Cir. 2017).

As set forth above, the PSR established that defendant was arrest for the first set of offenses prior to committing the second set of offenses, which was prior to his commission of the third set of offenses. Therefore, all three sets of convictions are counted separately. The fact that the sentences were imposed concurrently on the same day does not change this result. Wright, 862 F.3d at 1281; United States v. Delaney, 639 F. App'x 592, 597 (11th Cir. 2016) ("Because the sentences were separated by an intervening arrest, it is immaterial that the sentences were

imposed on the same day.")  Because counsel had no valid basis to object, there was no ineffective assistance of counsel and this component of the claim is denied.

**(b) Erroneous Scoring of Criminal History Points**

Petitioner asserts that he received ineffective assistance of counsel when his attorney failed to object to the scoring on two of his other prior convictions.

- On May 10, 2004, petitioner was arrested for driving on a revoked license.  On June 30, 2004, petitioner entered a plea of nolo contendere, and was placed on 18 months of probation.  After several violations, probation was revoked on March 10, 2006, and petition was sentenced to 1 year and 1 day of prison with 188 days of time served. (Id., ¶ 101.)  Petitioner was assessed two criminal history points.

- On December 21, 2007, petitioner was arrested for driving while license suspended habitual offender, possession of marijuana under 20 grams, and possession of cocaine.  On April 3, 2008, petitioner pleaded nolo contendere to the driving with a suspended license habitual offender and was sentenced to 90 days with credit for 31 days of time served.  (Id., ¶ 103.) Petitioner was assessed two criminal history points.

Petitioner asserts that his attorney was ineffective by failing to object to the two points for each conviction because he did not receive a sentence of more than one year and one month imprisonment.

Under § 4A1.1(b), two points are added for each prior sentence of imprisonment of at least 60 days but not more than one year and one month. U.S. Sentencing Guidelines Manual § 4A1.1(b). Both of these convictions qualify, and there was no basis for defense counsel to object to this aspect of the criminal history scoring. This portion of the claim is denied.

### (9) Ground Nine: Failure to Object to Drug Purity

Petitioner argues that his attorney provided ineffective assistance by failing to object to the purity of the substance in Count Eight. Petitioner asserts that the Court improperly included the weight of the cutting agent in determining the amount of cocaine involved in Count Eight, and an objection would have resulted in a lower sentence.

In Count Eight, petitioner was charged with possession with intent to distribute a quantity of a mixture or substance containing a detectable amount of cocaine on or about October 29, 2013. Petitioner was arrested at the Hibiscus Avenue address where a quantity of suspected cocaine was found in the master bedroom. (Cr. Doc. #277, p. 194.) A Senior Crime Laboratory

Analyst with the Florida Department of Law Enforcement testified the net weight of the cocaine was 131.98 grams, plus or minus 0.24 grams. (Cr. Doc. #277, pp. 193-97.) It is undisputed that the FDLE lab report for the cocaine charged in Count Eight did not distinguish the number of grams of cocaine from the number of grams of cutting agent, but simply combined the weight. The substance was thereafter destroyed. According to the PSR, the drug counts (Counts One, Five, Six, Eight, and Nine) were grouped under Sentencing Guidelines, and the base offense level was calculated based upon 1.8 kilograms of cocaine and less quantities of heroin and crack cocaine. (Id. ¶¶ 73-74.) Petitioner was assigned a Base Offense Level of 26 based on the presence of at least 400 kilograms but less than 700 kilograms of marijuana under the Drug Quantity Table, U.S. Sentencing Guidelines Manual § 2D1.1(c). (Cr. Doc. #264, ¶ 74.)

Petitioner argues that the Court had an obligation to determine the sentence based on the "marketable" amount of cocaine, which could not be done as to Count Eight because cutting agents cannot be included in the calculation of the amount of cocaine. Petitioner asserts that the failure of his attorney to object on this basis constituted ineffective assistance of counsel.

Section 2D1.1(c) of the United States Sentencing Guidelines sets out base offense levels keyed to drug quantities. It uses the

same "mixture or substance" language from 21 U.S.C. § 841(b), setting a defendant's base offense level based on "the entire weight of any mixture or substance containing a detectable amount of the controlled substance." U.S. Sentencing Guidelines Manual § 2D1.1(c) cmt. n.1.

The law in the Eleventh Circuit is clear that an unusable component of a substance is not included in the weight, but a cutting agent is included in the weight of the substance. <u>United States v. Rolande-Gabriel</u>, 938 F.2d 1231, 1238 (11th Cir. 1991) (weight of an unusable liquid mixture is not included, but "appellant should have been sentenced based on the 72.2 grams of usable powder *consisting of cutting agent and cocaine base*." (emphasis added)). <u>See</u> <u>Griffith v. United States</u>, 871 F.3d 1321, 1330-36 (11th Cir. 2017)(citing cases). Since there was no basis for an objection, there was no ineffective assistance of counsel, and this ground is denied.

Additionally, any error as to the amount of cocaine in Count Eight was harmless since the inclusion of the amount did not affect the Sentencing Guidelines calculation of the base offense level.

**B. Ineffective Assistance of Appellate Counsel**

**(1) Ground Ten:  Failing to Appeal Role in Offense Error**

Petitioner argues that appellate counsel erred by failing to argue that the district court erred in finding that he was a

manager or supervisor, an issue preserved in the district court.
Petitioner argues that the government failed to establish his role
by a preponderance of evidence since it was based on the testimony
of a jailhouse informant and two confidential informants, which
was not sufficient to show he was a manager or supervisor.

At sentencing, counsel successfully argued against petitioner
being enhanced as a leader or organizer.  The Court stated:

> . . . In my view, what the government has
> established, looking at Application Note 2, is
> a situation where the defendant, by a
> preponderance of the evidence, was at least
> someone who had management responsibilities
> over property, assets, or the activities of
> the criminal organization.
>
> I find that the government has shown that the
> defendant was a manager or supervisor by at
> least a preponderance of the evidence, but I'm
> not convinced that the government has shown by
> a preponderance that the defendant was an
> organizer or leader. So, under Section
> 3B1.1(b), the Court will assess three levels
> instead of the four levels.

(Cr. Doc. #296, p. 36.)

The Court's adjustment for role is a factual finding that
would have been reviewed on direct appeal for clear error.  United
States v. Phillips, 287 F.3d 1053, 1055 (11th Cir. 2002).  "A
finding is clearly erroneous when although there is evidence to
support it, the reviewing court on the entire evidence is left
with the definite and firm conviction that a mistake has been
committed."  United States v. Badio, 178 F. App'x 933, 934 (11th

Cir. 2006) (quoting Anderson v. City of Bessemer City, N.C., 470
U.S. 564, 573-74 (1985)).  There was ample evidence presented at
trial before the Court to support the role enhancement.  The Court
of Appeals would not have found an error in this factual finding
even if raised. "[A]ppellate counsel who files a merits brief need
not (and should not) raise every nonfrivolous claim, but rather
may select from among them in order to maximize the likelihood of
success on appeal."  Smith v. Robbins, 528 U.S. 259, 288 (2000)
(citing Jones v. Barnes, 463 U.S. 745 (1983)).  Appellate counsel
was not deficient for failing to raise this issue.

(2)  **Ground Eleven:  Sufficiency of Evidence of Count Nine**

Count Nine charged that on or about October 29, 2013,
petitioner, having been convicted of more than nine prior felony
offenses, knowingly possessed one or more firearms and ammunition
in and affecting interstate commerce.  (Cr. Doc. #31.)  Count Nine
identified three shotguns, three rifles, and forty-two rounds of
various brands of ammunition.

Petitioner asserts that the government must prove that he
actually knowingly possessed the firearm alleged in Count Nine.
Petitioner argues that seizing the firearm or ammunition from the
closet of a bedroom does not prove he actually possessed the
firearm, and therefore the government failed to establish the
necessary elements beyond a reasonable doubt.  Petitioner argues

that appellate counsel was obligated to raise this issue.  (Cv. Doc. #2, p. 20.)

Defendant need not physically possess the firearm in order to be found guilty.  The jury was instructed as follows with regard to possession:

> The law recognizes several kinds of possession.  A person may have actual possession, constructive possession, sole possession, or joint possession.
>
> "Actual possession" of a thing occurs if a person knowingly has direct physical control of it.
>
> "Constructive possession" of a thing occurs if a person doesn't have actual possession of it, but has both the power and the intention to take control over it later.
>
> "Sole possession" of a thing occurs if a person is the only one to possess it.
>
> "Joint possession" of a thing occurs if two or more people share possession of it.
>
> The term "possession" includes actual, constructive, sole, and joint possession.

(Cr. Doc. #188, p. 17.)  Petitioner's listed address on his driver's license was the 1606 Hibiscus address where the items were seized, and his motorcycle was parked near the front door of the house.  (Cr. Doc. #307, p. 10.)  There were clearly sufficient facts showing petitioner's association with the premises and its contents.  When reviewing for sufficiency of the evidence, an appellate court views the evidence in the light most favorable to

the government, with all inferences and credibility choices made in the government's favor.  United States v. Gamory, 635 F.3d 480, 497 (11th Cir. 2011).  A conviction is affirmed if, based on this evidence, a reasonable jury could have found the defendant guilty beyond a reasonable doubt.  Id.  The facts presented to the jury in this case amply established at least constructive possession. Appellate counsel is authorized to pick and choose among issues, and committed no error in declining to raise this issue.  The motion is denied on this issue.

### (3)  Ground Twelve: Insufficient Evidence of Conspiracy

Petitioner argues that appellate counsel should have argued against the finding of an overall conspiracy in Count One, but instead counsel made an unsuccessful argument that was vague and broad. Petitioner argues that what the government alleged and proved were multiple conspiracies, and not a single conspiracy.

The jury was provided the following instruction with regard to finding a single overall conspiracy:

> Proof of several separate conspiracies is not proof of the single, overall conspiracy charged in the Superseding Indictment unless one of the several conspiracies proved is the single overall conspiracy.
>
> You must decide whether the single overall conspiracy charged existed between two or more conspirators. If not, then you find the Defendants not guilty of that charge.

> But if you decide that a single overall
> conspiracy did exist, then you must decide who
> the conspirators were. And if you decide that
> a particular Defendant was a member of some
> other conspiracy – not the one charged – then
> you must find that Defendant not guilty.
>
> So to find a Defendant guilty, you must all
> agree that the Defendant was a member of the
> conspiracy charged – not a member of some
> other separate conspiracy.

(Cr. Doc. #188, pp. 13-14.)  The Eleventh Circuit has addressed

the issue of a variance between an indictment and the proof at

trial:

> Because the jury determines the question of
> fact as to whether the evidence establishes a
> single conspiracy, the arguable existence of
> multiple conspiracies does not constitute a
> material variance from the indictment if,
> viewing the evidence in the light most
> favorable to the Government, a reasonable
> trier of fact could have found that a single
> conspiracy existed beyond a reasonable doubt.
> United States v. Adams, 1 F.3d 1566, 1584
> (11th Cir. 1993). Accordingly, we will not
> disturb the determination of the jury that a
> single conspiracy exists if supported by
> substantial evidence. United States v.
> Calderon, 127 F.3d 1314, 1327 (11th Cir.
> 1997).

United States v. Moore, 525 F.3d 1033, 1042 (11th Cir. 2008).  As

long as there is a common goal, which is read broadly, separate

transactions are not necessarily separate conspiracies.  United

States v. Richardson, 532 F.3d 1279, 1284 (11th Cir. 2008).

Clear and substantial evidence supports the finding of a

single conspiracy.  With the help of Jason Nixon, who was

purchasing drugs, the Fort Myers Police Department carried out an investigation. Nixon went to a house on Utana Avenue to buy drugs from petitioner, and also went to 6226 Demery to make controlled buys from co-defendant James Hood several times, and petitioner was in the kitchen during a June 26, 2013 transaction. On August 8, 2013, Nixon purchased cocaine directly from petitioner. It was a search at the Demery address that led officers to the house at 1606 Hibiscus Avenue. (Cr. Doc. #307, pp. 3-6.)

As officers maintained surveillance on the Demery address, Nicholas Herman was observed making purchases and after he was charged with possession of cocaine and heroin, Mr. Herman became a confidential informant. Herman made a series of controlled purchases from petitioner's brother and co-defendant James Hood, and later identified co-defendant Morris for some of the purchases. (Id., pp. 8-9.) A second search warrant was executed for the 6226 Demery address, and when officers arrived no one was inside because they were all next door at 6220 Demery. The officers executed a search warrant for this second Demery address where Terry Little, an individual who lived at 6226 Demery testified that petitioner lived next door at 6220 Demery. Little testified that everyone at 6226 Demery seemed to be working for petitioner. (Id., pp. 9-10.)

The jury's finding of a single conspiracy was clearly supported by substantial evidence linking the controlled buys with the properties and defendants.  Appellate counsel did not provide deficient performance by failing to raise this issue on direct appeal.  The motion denied on this ground.

### (4)  Ground Thirteen:  Rehearing and En Banc Petitions

Petitioner argues that the officers who breached the 1606 Hibiscus address had no reason to believe additional individuals were inside after suspects were arrested, and the firearm should have been suppressed.  Petitioner argues that appellate counsel had a duty to file a petition for rehearing and rehearing en banc because the facts in his case were closer to United States v. Chavas, 169 F.3d 687, 692 (11th Cir. 1999) than the case cited, United States v Burgos, 720 F.2d 1520, 1525 (11th Cir. 1983).

Appellate counsel did raise the legal argument on direct appeal.  The Eleventh Circuit found no error and agreed with the district court that the officers did not exceed their authority during the protective sweep:

> Here, Hood contends that, when officers swept
> 1606 Hibiscus after taking him into custody,
> they exceeded the scope of a permissible
> protective sweep. Hood asserts that the
> officers moved him outside the home, at which
> point the need to sweep for dangerous
> individuals was extinguished. In addition,
> Hood argues that the officers who conducted
> the sweep had no basis for believing that
> there was anyone else inside the home who

> presented a danger. We find these arguments
> unpersuasive.

(Cr. Doc. #307, p. 36.)

A petition for rehearing by the appellate panel "must state with particularity each point of law or fact that the petitioner believes the court has overlooked or misapprehended and must argue in support of the petition." Fed. R. App. P. 40(a)(2). A petitioner for rehearing or an en banc hearing is the exception rather than the rule. "An en banc hearing or rehearing is not favored and ordinarily will not be ordered unless: (1) en banc consideration is necessary to secure or maintain uniformity of the court's decisions; or (2) the proceeding involves a question of exceptional importance." Fed. R. App. P. 35(a). There was no basis for appellate counsel to believe that rehearing or an en banc hearing was appropriate, and no obligation to file such a petition.

Petitioner's right to effective assistance of counsel does not extend to motions for rehearing after denial of a direct appeal. See Wainwright v. Torna, 455 U.S. 586, 587–88, 102 S. Ct. 1300, 1301 (1982) ("[A] criminal defendant does not have a constitutional right to counsel to pursue discretionary . . . applications for review in this Court [so] he could not be deprived of the effective assistance of counsel.") "Any failure by his counsel on appeal to pursue discretionary review in either the

Court of Appeals or the Supreme Court . . . cannot give rise to an ineffective assistance of counsel claim." <u>Woods v. United States</u>, No. 1:08-CV-0098-MEF, 2010 WL 446998, at *7 (M.D. Ala. Feb. 4, 2010). As the failure to pursue a rehearing is discretionary, and there is no guarantee that the motion would be granted, there was no ineffective assistance of counsel. The motion is denied on this claim.

**(5) Ground Fourteen: Government Destruction of Evidence**

Petitioner argues that he is entitled to a new trial because the government acted in bad faith when it destroyed evidence and prevented petitioner from challenging the FDLE's lab report. Petitioner argues there was no reason placed on the record for destroying the evidence months before trial.

The evidence, including the cocaine, was destroyed approximately 6 months before the commencement of trial. (Cr. Doc. #276, pp. 111, 112.) The seized items found at 1606 Hibiscus Avenue were taken into evidence and placed in storage, including the cocaine. (<u>Id.</u>, p. 110.) The cocaine was sent to the FDLE for chemistry analysis, and then it was returned to the Lee County Sheriff's Office after that process was done for destruction. (<u>Id.</u>, pp. 110-111.)

Unless there is proof that "the destroyed evidence was exculpatory or that the evidence was destroyed in bad faith",

Rolande-Gabriel, 938 F.2d at 1238, there is no prejudice.  The Eleventh Circuit has held "where the material has been destroyed in spite of the government's good faith attempt to preserve it, testimony as to the nature of the material need not be suppressed absent some showing that the testing of the material by another expert would have been reasonably likely to produce evidence favorable to the defendant."  United States v. Nabors, 707 F.2d 1294, 1297 (11th Cir. 1983).

Evidence was presented at trial by way of pictures of what was found, as well as through forensic experts as to the nature of the substance, i.e., cocaine.  Mere speculation that it must be bad faith is insufficient because petitioner has not shown that evidence or his own expert would have found evidence that it was not cocaine.  The motion is denied.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1.  Petitioner's Motion Under 28 U.S.C. Section 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Cv. Doc. #1; Cr. Doc. #327) is **DENIED**.

2.  The Clerk of the Court shall enter judgment accordingly and close the civil file.  The Clerk is further directed to place a copy of the civil Judgment in the criminal file.

**IT IS FURTHER ORDERED:**

**A CERTIFICATE OF APPEALABILITY (COA) AND LEAVE TO APPEAL *IN FORMA PAUPERIS* ARE DENIED.** A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1); Harbison v. Bell, 556 U.S. 180, 183 (2009). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004), or that "the issues presented were adequate to deserve encouragement to proceed further," Miller-El v. Cockrell, 537 U.S. 322, 336 (2003)(citations omitted). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE and ORDERED** at Fort Myers, Florida, this ___15th___ day of April, 2019.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Petitioner
AUSA